1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

9
10
11

12  SUSAN HEATON,

13                          Plaintiff,

14              v.

15
16  PRUDENTIAL INSURANCE
    COMPANY et al.,

17                          Defendants.

18
19
20
21
22
23
24
25
26
27
28

)   CASE NO. 06cv1403 J (NLS)
)
)
)   **ORDER:**
)
)   **(1) ADOPTING MAGISTRATE**
)   **JUDGE STORMES'S REPORT AND**
)   **RECOMMENDATION**
)
)   **(2) GRANTING IN PART AND**
)   **DENYING IN PARTH**
)   **PETITIONER'S MOTION FOR**
)   **PARTIAL SUMMARY JUDGMENT**
)
)   **(3) GRANTING DEFENDANT'S**
)   **MOTION FOR SUMMARY**
)   **JUDGMENT**

        The Petitioner Susan Heaton filed a complaint against Prudential Insurance Company of

America ("Prudential") and Isis Pharmaceuticals, Inc.'s ("Isis") Long Term Disability Plan

("Plan") (collectively, "Defendants") for breach of the Employee Retirement Income Security

Act of 1974 (ERISA).   Before the Court is Judge Nita L. Stormes's Report and

Recommendation ("R&R") recommending this Court: (1) grant the Petitioner's Motion for

Summary Judgment as to the standard of review; (2) deny the Petitioner's Motion for Summary

Judgment regarding Petitioner's status as a member of the covered class under Defendant's long-

term disability plan; and (3) grant the Defendants' Motion for Summary judgment regarding Petitioner's status as a member of the covered class.  For the reasons set forth below, this Court **ADOPTS** the R&R in its entirety and (1) **GRANTS** Petitioner's motion for partial summary judgment as to the standard of review; (2) **DENIES** Petitioner's motion for partial summary judgment as to her status as a member of the covered class; and (3) **GRANTS** Defendants' motion for summary judgment as to Petitioner's status as a member of the covered class.

### *Factual Background*

#### I.   Petitioner's Job.

Isis employed Petitioner as an Assistant Director of Human Resources.  (Defendants's Reply Separate Statement of Undisputed Facts (D-SSUF) at 1.) Petitioner typically worked 10-12 hours per day, 50-60 hours per week.  (Plaintiff's Separate Statement of Undisputed Material Facts (P-SSUF) at 8; Lodgment Ex. B (AR) at 329.)  As part of her job Heaton was required to work on a computer and handwrite more than 8 hours per day.  (AR at 329.)

#### II.   Restrictions on Petitioner's Working Conditions.

Petitioner began experiencing elbow strain while working for Isis.  (D-SSUF at 13.) After submitting a claim for workers' compensation in November 1999, her treating physician placed her on certain job restrictions.  (*Id.*)  From November 29 to December 7, 1999, she was limited to lifting no more than 5 pounds and minimizing repeated forceful grasping with either hand.  (*Id.* at 661.)  From December 13, 1999 to January 26, 2000, she was limited to 8 hours per day of computer keyboard time.  (*Id.* at 662-664.)  From February 20 to March 9, 2000, she was restricted to a 40 hour work week.  (*Id.* at 665-667.)  On March 9, 2000, Dr. Pierce limited Petitioner to doing one hour per day of computer work at 5-10 minutes per hour and 5-10 minutes per hour of handwriting.  (*Id.* at 668-673.)  These limitations lasted until June 27, 2000. (*Id.*)

#### III.   The Layoff and Settlement Agreement.

Isis laid Petitioner off around April 27, 2000.  (D-SSUF at 11.)  Consequently, Petitioner and Isis entered a settlement agreement that included a severance package.  (*Id.* at 26.)  Isis

signed the agreement on April 27, 2000 and Petitioner signed it on May 15, 2000.  (*Id.*)  It took

effect on April 25, 2000.  (*Id.*)  The settlement agreement included a severance package for

Petitioner with these terms:

> In consideration of this Agreement, the Company (Isis) agrees to pay full salary and benefits including medical, dental and vision benefits as severance through July 1, 2000, or until the employee finds full time employment whichever is sooner (the "termination date"); and to continue vesting stock options until the date of termination as full and final settlement.

(AR at 332.)

The agreement also included an integration clause:

> This Agreement constitutes the complete, final and exclusive embodiment of the entire agreement between the parties with respect to the subject matter hereof. . . . the Agreement is executed without reliance upon any promise, warranty of representation, written or oral, by the parties or any representative of the parties, other than those expressly contained herein... the Agreement supersedes all prior agreements regarding the terms or termination of Employee's employment by the Company.

(*Id.*)

## IV.  **The Prudential Long Term Disability Plan.**

### A.  **Eligibility.**

On January 1, 1995, Isis became the Contract Holder of Prudential's Group Policy No. GO-99428-CA employer-sponsored benefit program for long-term disability ("LTD").  (D-SSUF at 2.)  The Plan provided that persons were eligible for insurance if (1) they were full-time Isis employees; (2) they were in the covered class.  (*Id.* at 3.)  The plan considered employees full-time if they were regularly working as normal full-time Isis employees.  (*Id.* at 4.)  Employees in the covered class were Isis regular full-time employees.  (*Id.* at 5.)

### B.  **Disability Defined.**

The Plan defined "total disability" to exist when:

> (1) due to sickness or accidental injury, both of these conditions are true:
>
> > (a) [The employee is] not able to perform, for wage or profit, the material and substantial duties of [his or her] occupation.
> >
> > (b) After the initial duration of a period of total disability, [the employee is] not able to perform for wage or profit the material and substantial duties of any job for which [the employee is] reasonably fitted by [his or her] education, training or experience.

(2) [The employee is] not working at any job for wage or profit.

(3) [The employee is] under the regular care of a doctor.

(AR at 025.)

Benefits are payable for total disability "only if the period of disability began while [the employee was] a covered person." (*Id.* at 026.)

### C.    Termination of Insurance.

The Plan explained that for insurance purposes employment would end when the employee was no longer an Isis "active" full-time employee. (*Id.* at 011.)  The "active" requirement required full-time employment at Isis's place of business or at any other place that Isis required that employee to go for work. (D-SSUF at 6.)   Normally, the Plan would expire when the employment ended. (AR at 011.) Isis, however, could still consider the employee as employed and a member of the covered class during certain types of absences from full-time work. (*Id.*)  Isis had to decide which employees on what types of absences could be considered as still employed, and for how long. (*Id.*)  In doing this, Isis was not able to discriminate among persons in like situations. (*Id.*)  Isis, if it chose, could consider employees as still employed for these types of absences for the listed time limits:

(1) For absence due to part-time employment or retirement, there is no time limit.

(2) For absence due to disability:

(a) Under health care coverage, if any, the time limit is the end of the 29th Contract month following the contract month in which the absence from full-time work starts.

(b) Under any other coverage there is no time limit.

(3) For absence due to temporary layoff the time limit is the end of the contract month following the contract month in which the absence     from full-time work starts.

(4) For absence due to leave of absence, there is no time limit.

(*Id.*)

### D.    Amendment to the Plan.

According to the Plan, any changes to the Group Contract required: (1) an endorsement on it signed by an officer of Prudential; or (2) an amendment to it signed by the Contract Holder (Isis) and by an officer of Prudential.  (D-SSUF at 3; AR at 009.)

***Procedural Background***

### I.   Petitioner's Claim for Long Term Disability.

To make a claim, a claimant had to submit a written proof of loss that addressed the occurrence, character and extent of the loss within 90 days after the date of the loss.  (*Id.* at 10.)  On June 1, 2000, Petitioner submitted a claim form to Prudential for long-term disability benefits.  (*Id.* at 11.)  She said she suffered from a work-related injury of bilateral arm strain, she first received treatment for the condition on November 29, 1999, she last worked on April 27, 2000 and her disability began on July 2, 2000.  (*Id.*)  On July 10, 2000, Isis filled out the employer statement that said Petitioner's last day of work was May 1, 2000 and that her last day was "due to reduction in force not disability."  (*Id.*)  On September 30, 2000, Prudential denied Petitioner's claim for LTD, concluding that she did not meet the definition of "total disability" based on Prudential's assessment of medical documentation provided by Petitioner's doctors.  (*Id.* at 14.)  The denial letter stated:

> Information in file indicates you went out of work. . . effective July 2, 2000, due to bi-lateral tendinitis. Your employer has advised that you were voluntarily laid off effective May 1, 2000, and were paid 100% salary continuance through July 1, 2000. Therefore, your date of disability is July 2, 2000.

(P-SSUF at 17.)

### II.   Petitioner's Appeals.

By letter dated November 25, 2000, Petitioner appealed Defendants' denial of benefits.  (*Id.* at 15.)  Defendant Prudential told Petitioner, on January 18, 2001, that it would evaluate her appeal once it received additional information.  (*Id.* at 16.)  On April 29, 2002, Prudential informed Petitioner's attorney of its continued efforts to obtain the requested information from Petitioner and her former attorney.  (*Id.* at 17.)  On May 24, 2002, Prudential notified Petitioner that it received her request for reconsideration and was reevaluating her claim.  (*Id.* at 18.)

On June 13, 2002, Prudential upheld its initial decision denying Petitioner's claim because she did not meet the definition of "total disability." (*Id.* at 19.) Petitioner filed a second request for reconsideration, and on May 14, 2004, Prudential again informed her it was upholding its original decision. (*Id.* at 20.)

On April 13, 2005, Petitioner appealed Prudential's decision for a third time. (*Id.* at 21.) In her request she enclosed her Social Security benefits award that stated a disability date of July 1, 2000. (*Id.* at 22.) Then, on May 2, 2005, while awaiting a decision on her third appeal, Petitioner advised Prudential that the onset of her disability was actually February 29, 2000 and not July 2, 2000. (*Id.* at 23)

Prudential acknowledged receiving Petitioner's third and final administrative appeal on May 5, 2005. (*Id.* at 24.) On May 23, 2005, Prudential requested additional information needed to clarify issues surrounding Petitioner's last day of work and notified Petitioner that it was suspending its investigation pending receipt of previously-requested tax information. (AR at 429-431.) On August 24, 2005, Prudential upheld its decision to deny long-term disability to Heaton, concluding that she did not meet the definition of "total disability." (*Id.*) Prudential also concluded that because her last day of work was April 27, 2000, she ceased to be "actively at work" and a "regular full time employee" as of April 28, 2000. (*Id.* at 438-439.) The claim examiner found that the coverage under the policy ended as of April 28, 2000 and any medical condition that arose or worsened as of July 2, 2000 was not covered under the Plan. (*Id.*)

***Standard of Review***

## I.    __Denial of ERISA Benefits.__

A court will review a denial of benefits under an ERISA plan de novo, "unless the benefit plan gives the administrator of fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). A court will only review a denial for abuse of discretion. *Kearney v. Standard Ins. Co.,* 175 F.3d 1094, 1090 (9th Cir. 1999).

06cv1403 J (NLS)

## II.   Reviewing a Magistrate Judge's Report and Recommendation.

The district court's duties in connection with a magistrate judge's R&R are set forth in Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1).  Federal Rules of Civil Procedure 72(b); 28 U.S.C. § 636(b)(1).  The district court must make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 676 (1980).  "When no objections are filed, the district court may assume the correctness of the magistrate judge's findings of fact and decide the motion of the applicable law."  *Johnson v. Nelson,* 142 F. Supp. 2d 1215, 1217 (S.D. Cal. 2001).  "Under such circumstances, the Ninth Circuit has held that 'a failure to file objections only relieves the trial court of its burden to give de novo review to factual findings; conclusions of law must still be reviewed de novo.'"  *Id.*  (Quoting *Barilla v. Ervin*, 886 F.2d 1514, 1518 (9th Cir. 1989)).  Thus, the Court conducts a de novo review of any factual findings to which Petitioner objects and a de novo review of conclusions of law.

## III.   Summary Judgment.

Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56c; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is "material" when, under the governing substantive law, it could affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.

### A.   Moving Party's Burden.

A party seeking summary judgment bears the initial burden to establish an absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  The moving party can satisfy this burden by (1) presenting evidence that negates an essential element of the non-moving party's case; or (2) demonstrating that the non-moving party failed to establish an essential element of that party's case for which that party bears the burden of proof.  *Id.* at 322-23.

### B.      Non-Moving Party's Burden.

If the moving party meets this initial burden, the non-moving party cannot defeat summary judgment by merely demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, the non-moving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file, designate 'specific facts showing that there is genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

### C.      The Court's Duty.

In ruling on a motion for summary judgment, "the district court may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001).  Therefore, the court is not obligated to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan,* 91 F.3d 1275, 1279 (9th Cir. 1996) (internal citation omitted).  Further, the court must view all inferences drawn from the underlying facts in the light most favorable to the non-moving party. *Matsushita*, 475 U.S. at 587.  "Credibility determination (and) the weighing of evidence . . . are jury functions, not those of a judge, (when) he (or she) is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

### *Petitioner's Objections to the Report and Recommendation*

Petitioner objects to magistrate Judge Stormes's recommendation that this Court grant Defendants' Motion for Summary Judgment as to the issue of whether Petitioner was a member of the covered class.  (Pet. Objs. to R&R at 2.)  Particularly, the Petitioner objects to two conclusions made in the R&R:  (1) that there is no dispute over the facts showing Petitioner was not a member of the covered class; and (2) that there is no dispute as to the facts showing Petitioner was not disabled prior to the time she ceased active employment in April of 2000. (*Id.*)

*Discussion*

The R&R correctly found that the Petitioner was not a full-time employee, thus not a member of the covered class at the onset of her disability, July 2, 2000.  (R&R at 9.)  Petitioner seeks to augment the administrative record with a payroll stub that she claims shows Defendant Isis's intent to extend the long-term disability plan through July 1, 2000.  (Pet'r's Objs. at 3.)  (*Id.*)  In an accompanying order the court denies Petitioner's motion because Petitioner does not provide any evidence to show she was a full-time employee, accordingly this Court **DENIES** Petitioner's motion for summary judgment as to her status as a member of the covered class.[1]

I.      **Petitioner's Entitlement to Disability Benefits.**

      A.      **Petitioner's Status as a Full-Time Employee and her Membership in the Covered Class.**

The R&R correctly ruled that the Petitioner was not a full-time employee on July 1, 2000, thus was not a member of the covered class.  (R&R at 9.)  Subject to exception, only regular, full-time employees could become members of the covered class.  (D-SSUF at 5.)  Employees were considered full-time if they were "regularly working for the employer at least the number of hours in the employer's normal full-time work week for (the employee's) class, but not less than 20 hours per week."  (AR at 023.)  Employees in the covered class were regular Isis full-time employees.  (D-SSUF at 5.)  Additionally, benefits were payable for total disability only if the period of disability began while the employee was a covered person.  (AR at 026.)

Petitioner stopped going to work on April 27, 2000.  (*Id.* at 686.)  She entered into a settlement agreement that lasted until July 1, 2000.  (*Id.* at 332.)  She provides no evidence that she was working full-time between April 27 and July 1.  Further, she offers no evidence of any other agreement, written or oral, between her and Isis, regarding the extension of her LTD benefits.  (R&R at 10.)  Because Petitioner was not a full-time employee on July 1, 2000, she was not a member of the covered class.

---

[1] Petitioner's Motion to Augment the Administrative Record was addressed and denied in a separate motion.

## B.     Exceptions to the Full-Time Requirement.

The R&R correctly concluded that no exception to the Plan's full-time employee requirement applies here.  (R&R at 10.)  The Plan provided that an employee need not be working full-time to be considered a member of the covered class if the employee was absent due to part-time employment, disability, temporary layoff or leave of absence.  (D-SSUF at 3.) Defendants have presented evidence that no exception applies here because Petitioner's employment terminated "due to a reduction in force not disability."  (*Id.* at 11.)  To rebut this evidence, Petitioner had the duty to designate "specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324 (quoting Federal Rules of Civil Procedure 56(e)).  The only evidence Petitioner provided was the payroll stub, but the stub does not show she was laid off due to a disability.  (*See* Pet'r's Objs. at 2-6.)  Furthermore, Petitioner's proposed evidence, the payroll stub, does not rebut Prudential's assertions that Isis laid Petitioner off due to a reduction in the work force.  There is also no evidence that both Defendant Isis and Defendant Prudential amended the contract.  As such, Petitioner has not met an exception to the Plan.

## II.     Petitioner's Claim for Disability Based on the February 29, 2000 Date.

Pending the determination of her third request for review, Petitioner changed the onset date of disability from July 2, 2000 to February 29, 2000.  (D-SSUF at 23.)  To make a claim for disability, the parties do not dispute that the employee must provide Prudential with written proof of loss of a claim that "cover(s) the occurrence, character and extent of that loss. . . within 90 days after the date of that loss."  (*Id.* at 10) The Policy however, provides an exception to that rule when submitting the **initial** proof of loss:

> **Proof of Loss:** Prudential must be given written proof of the loss for which claim is made under the coverage.  This proof must cover the occurrence, character and extent of that loss.  It must be furnished within 90 days after the date of the loss, **except** that:
>
> (a) **Initial** proof of loss must be furnished within 90 days **after** the end of the first month following the elimination period.
>
> (b) Proof for each later month of continuing loss must be furnished within 90 days after the end of that month.

1   (AR at 037.)  The Plan defines the "elimination period" as "the first 13 weeks of continuous total

2   disability."  (*Id.* at 019.)

3         Here, taking February 29, 2000 as the date of the alleged onset of total disability, the first

4   month following the 13 week elimination period is June 2000.  Petitioner submitted a claim form

5   to Prudential for LTD benefits on June 1, 2000, within the relevant 90-day period.  (D-SSUF at

6   11.)  Therefore, this Court **ADOPTS** Magistrate Judge Stormes's conclusion that Petitioner's

7   application based on the February 29, 2000 disability onset date was timely because she filed her

8   proof of claim within 90 days after the first month following the elimination period.

9       **III.**    **Determination of "Totally Disability."**

10         While neither party expressly moves for a determination of whether the Petitioner was

11   totally disabled the determination is relevant given the possible application of the disability onset

12   date of February 29, 2000.  (R&R at 11.)  To be determined "totally disabled," Petitioner had to

13   show that due to sickness or accidental injury she could not perform the material and substantial

14   duties of her occupation.  (AR at 025.)  The R&R correctly found that Petitioner performed the

15   material and substantial duties of her job.  (R&R at 12.)

16         Petitioner claims she was "totally disabled" at the time she ceased working on April 27,

17   2000.  (*Id.* at 6.)  She objects to the R&R's use of *Dodson v. Woodmen of the World Life Ins.*

18   *Soc.*, 109 F.3d 436, 438 (8th Cir. 1997) and *Radford Trust v. First Unum Life Insurance*

19   *Company of America*, 321 F.Supp.2d 226 (D. Mass. 2004) to support its conclusion that unless

20   there are job performance issues a person cannot be concurrently at work and disabled.  (Pet'r's

21   Objs. at 10.)  Petitioner argues that the correct emphasis in determining the definition of "total

22   disability" is not job performance but whether or not one was able to perform the usual and

23   customary job duties of one's own occupation prior to the time one was laid off.  (*Id.*)  Petitioner

24   argues she was not able to perform her own job duties prior to the time she was laid off.  (*Id.*)

25   "In other words, (Petitioner) need not be precluded from engaging in any work, as she would in

26   the Social Security context, but only from engaging in her own occupation."  (*Id.*)  Petitioner

27   argues the court drew an incorrect inference from the language of the Plan when it concluded

28   that she was able to do the material and substantial duties of her occupation.  (*Id.*)  Petitioner

1   claims she was unable to do her job and therefore her employer made a short term modification

2   which permitted her to continue to work in a limited capacity.  (*Id.*)  She further argues this job

3   modification is not the same as performing the material and substantial duties of her occupation.

4   (*Id.* at 9.)[2]  Petitioner claims her work restrictions permitted her no more than three hours of

5   computer work and handwriting per day but her own occupation required her to do computer

6   work and type in excess of 8 hours per day.  (*Id.*)  Thus she could only do 37.5% of her job

7   duties.  (*Id.*)  Because she could do some occupation, but could not do her own occupation, she

8   concludes she meets the Plan's definition of "total disability."  (*Id.* at 9.)

9        Petitioner, however, does not provide sufficient evidence to show that these restrictions

10  affected her ability to perform.  She does not include in the record such things as a negative

11  productivity report, a poor job performance evaluation, or a memo regarding the quality of her

12  work.  (*See id.* at 12.)  The only medical opinion she provides is a letter dated September 10,

13  2003, from her treating physician, Dr. Harris, that summarily states:

14        In my medical opinion (Petitioner) has been unable to work at her usual
          and customary job duties since February 29, 2000.  This is based on her
15        physical examination of March 12, 2003 and her objective findings, past
          medical records, and her MRI reports.
16
17  (AR 337.)

18        Petitioner provides no other medical opinion–such as an opinion based on an examination

19  during the relevant time period or one supported by specific evidence–that shows her limitations

20  amounted to a disability that prevented her from doing her job.  (*See id.* at 12.)  Petitioner's

21  treating physician during the relevant time period, Dr. Pierce, wrote a letter on April 20, 2000 that

---

22  [2]  Petitioner claims there is a crucial difference between the terms job modification and job
    accommodation.  In the case of a job modification the employer and employee agree that the
23  issue affecting performance will likely be of limited duration.  As a result of a modification,
    the employee is prevented by her physician from doing her job, and will be given some other
24  job.  In the case of an accommodation, the employer and employee agree that the issue
    affecting performance is permanent and the job is changed to a new job with new
25  responsibilities.  Petitioner claims here, job modifications were thought to be temporary.
    Consequently, her job did not change, nor did its requirements.  After April 20, 2000 until
26  the last date she worked, she was unable to complete the substantial requirements of her job.
    All parties agree that while she was working she was not performing all of her job
27  requirements because she was under doctor's orders not to do the things she was doing prior
    to her injury.
28

1   stated Petitioner was under a disability that "precluded her from performing regular work" but did

2   not state that it precluded her from performing the modified work Isis had given her.  (*Id.*)  In

3   another report, Dr. Marion, a reviewing physician, concluded that "prior to August 2000, there

4   was no specific objective impairment supporting the patient's complaints of bilateral upper

5   extremity pain and dysfunction."  (AR at 075.)  Based on the lack of evidence showing

6   Petitioner's condition affected her job performance, the R&R found it is undisputed that she

7   performed the material and substantial duties of her job.  (R&R at 12.)

8

9                                          *Conclusion*

10          For the reasons stated above, the Court **ADOPTS** Magistrate Judge Stormes's Report and

11   Recommendation and **GRANTS** Petitioner's Motion for Partial Summary Judgment as to the

12   standard of review; **DENIES** Petitioner's Motion for Partial Summary Judgment as to her status

13   as a member of the covered class; and **GRANTS** Defendants' Motion for Summary Judgment as

14   to Petitioner's status as a member of the covered class.

15          **IT IS SO ORDERED.**

16

17   DATED:  March 18, 2008

18                                          _____
                                            HON. NAPOLEON A. JONES, JR.
19                                          United States District Judge

20

21

22

23

24

25

26

27

28