1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SUSAN HEATON, | ) CASE NO. 06cv1403 J (NLS) |
| Plaintiff, | ) |
| | ) **ORDER:** |
| v. | ) |
| | ) **(1) ADOPTING MAGISTRATE** |
| | ) **JUDGE STORMES'S REPORT AND** |
| | ) **RECOMMENDATION** |
| PRUDENTIAL INSURANCE | ) |
| COMPANY et al., | ) **(2) DENYING PETITIONER'S** |
| Defendants. | ) **MOTION TO AUGMENT THE** |
| | ) **ADMINISTRATIVE RECORD** |
| | ) |
| | ) |
| | ) |

Before the Court is Petitioner's Motion to Augment the Administrative Record
(Petitioner's Motion). Petitioner filed a complaint against Defendant Isis and Defendant
Prudential for breach of the Employee Retirement Income Security Act of 1974 (ERISA).
Petitioner now seeks to augment the administrative record with a payroll stub that she claims
demonstrates Defendant Isis's intent to extend the long-term disability ("LTD") benefits beyond
Petitioner's last day of employment.  (Pet'r's Mot. at 1.)  This Court **DENIES** Petitioner's
motion to augment the record because the payroll stub does not provide this Court with any
additional evidence showing Petitioner was eligible for benefits under Defendant Prudential's
long-term disability plan ("Plan").

*Factual Background*

### I.      Petitioner's Job.

Defendant Isis employed Petitioner as an Assistant Director of Human Resources. (Defendants' Reply Separate Statement of Undisputed Facts (D-SSUF) at 1.)  Petitioner typically worked 10-12 hours per day, 50-60 hours per week.  (Plaintiff's Separate Statement of Undisputed Material Facts (P-SSUF) at 8.)  As part of her job Petitioner was required to work on a computer and handwrite more than 8 hours per day.  (*Id.* at 10.)

### II.     Restrictions on Petitioner's Working Conditions.

Petitioner began experiencing elbow strain while working for Defendant Isis.  (D-SSUF at 13.)  After submitting a claim for workers' compensation in November 1999, her treating physician placed her on certain job restrictions.  (*Id.*)  From November 29 to December 7, 1999, she was limited to lifting no more than 5 pounds and minimizing repeated forceful grasping with either hand.  (P-SSUF at 11.)  From December 13, 1999 to January 26, 2000, she was limited to 8 hours per day of computer keyboard time.  (*Id.* at 12.)  From February 20 to March 9, 2000, she was restricted to a 40 hour work week.  (*Id.* at 13.)  On March 9, 2000, Petitioner was limited to doing one hour per day of computer work at 5-10 minutes per hour and 5-10 minutes per hour of handwriting.  (*Id.* at14.)  These limitations lasted until June 27, 2000.  (*Id.*)

### III.    The Layoff and Settlement Agreement.

Defendant Isis laid Petitioner off on or around April 27, 2000.  (D-SSUF at 11.)  Consequently, Petitioner and Defendant Isis entered a settlement agreement that included a severance package with these terms:

> In consideration of this Agreement, the Company agrees to pay full salary and benefits including medical, dental and vision benefits as severance through July 1, 2000, or until the employee finds full time employment whichever is sooner (the "Termination Date"); and to continue vesting stock options until the date of termination as full and final settlement.

(AR at 332.)

The agreement also included an integration clause:

> This Agreement constitutes the complete, final and exclusive embodiment   of the entire agreement between the parties with respect to the subject matter hereof . . . This Agreement is executed without reliance upon any promise, warranty of representation, written or oral, by the parties or any representative of the parties,

other than those expressly contained herein. . . This Agreement supersedes all prior agreements regarding the terms or termination of employee's employment by the Company.

(*Id.*)

## IV.   Long Term Disability Plan.

### A.   Eligibility.

On January 1, 1995, Defendant Isis became the Contract Holder of Defendant Prudential's Group Policy No. GO-99428-CA employer-sponsored benefit program for long-term disability. (D-SSUF at 2.)  The Plan provided that persons were eligible for insurance if (1) they were full-time employees; (2) they were in the covered class; and (3) they had completed the employment waiting period, if any.  (*Id.* at 3.)  A full-time employee is one who is regularly working for the employer at least the number of hours in the employer's normal full-time work week for the employee's class, but not less than 20 hours per week.  (*Id.* at 4.)  Employees in the covered class were regular full-time employees.  (*Id.* at 5.)

### B.   Disability Defined.

The Plan defined "total disability" to exist when:

(1) due to sickness or accidental injury, both of these conditions are          true:

(a) [The employee is] not able to perform, for wage or profit, the material and substantial duties of [his or her] occupation.

(b) After the initial duration of a period of total disability, [the employee is] not able to perform for wage or profit the material and substantial duties of any job for which [the employee is] reasonably fitted by [his or her] education, training or experience.

(2) [The employee is] not working at any job for wage or profit.

(3) [The employee is] under the regular care of a doctor.

(D-SSUF at 9.)

Benefits are payable for total disability "only if the period of disability began while [the employee was] a covered person."  (Administrative Record (AR) at 026.)

### C.   Termination of Insurance.

The Plan explained that for insurance purposes employment would end when the employee was no longer an "active" full-time employee.  (*Id.* at 3.)  The "active" requirement

required full-time employment at Defendant Isis's place of business.  (*Id.* at 6.)  Normally, the Plan would expire when the employment ended.  (*Id.* at 3.)  Defendant Isis, however, could still consider the employee as employed and a member of the covered class during certain types of absences from full-time work.  (*Id.*)   Isis, if they chose, could consider employees as still employed for these types of absences for the listed time limits:

> (1) For absence due to part-time employment or retirement, there is no time limit.
>
> (2) For absence due to disability:
>
>> (a) Under health care coverage, if any, the time limit is the end of the 29th Contract month following the contract month in which the absence from full-time work starts.
>>
>> (b) Under any other coverage there is no time limit.
>
> (3) For absence due to temporary layoff the time limit is the end of the contract month following the contract month in which the absence from full-time work starts.
>
> (4) For absence due to leave of absence, there is no time limit.

(*Id.*)

**D.    Amendments to the Plan.**

According to the Plan, any changes to the Group Contract required: (1) an endorsement on it signed by an officer of Defendant Isis; or (2) an amendment to it signed by Defendant Isis and by an officer of Defendant Prudential.  (*Id.*)

***Procedural Background***

In her initial claim Petitioner said she suffered from a bilateral arm strain for which she first received treatment on November 29, 1999 and she last worked on April 27, 2000.  (*Id.*)  She claimed her disability began on July 2, 2000.  (*Id.*)  On July 10, 2000, Defendant Isis filled out the employer statement that said Petitioner's last day of work was May 1, 2000 and that her last day was "due to reduction in force not disability."  (*Id.*)  On September 30, 2000, Defendant Prudential denied Petitioner's claim for long-term disability, concluding that she did not meet the definition of "total disability" based on Prudential's assessment of medical documentation provided by Petitioner's doctors.  (*Id.* at 14.)

1   Petitioner appealed Prudential's denial of benefits.  (D-SSUF at 15.)  Prudential told
2   Heaton, on January 18, 2001, that it would evaluate her appeal once it received additional
3   information.  (*Id.* at 16.)  On April 29, 2002, Prudential informed Petitioner's attorney of its
4   continued efforts to obtain the requested information from Petitioner and her former attorney.
5   (*Id.* at 17.)  On May 24, 2002, Prudential notified Petitioner that it received her request for
6   reconsideration and was reevaluating her claim.  (*Id.* at 18.)

7   On June 13, 2002, Prudential upheld its initial decision denying Petitioner's claim because
8   she did not meet the definition of "total disability."  (*Id.* at 19.)  Petitioner filed a second request
9   for reconsideration, and on May 14, 2004, Prudential again informed her it was upholding its
10  original decision.  (*Id.* at 20.)

11  On April 13, 2005, Petitioner appealed Prudential's decision for a third time.  (*Id.* at 21.)
12  In her request she enclosed her Social Security benefits award that stated a disability date of July
13  1, 2000.  (*Id.* at 22.)   Then, on May 2, 2005, while awaiting a decision on her third appeal,
14  Petitioner advised Prudential that the onset of her disability was actually February 29, 2000 and
15  not July 2, 2000.  (*Id.* at 23.)

16  Prudential acknowledged receiving Petitioner's third and final administrative appeal on
17  May 5, 2005.  (*Id.* at 24.)   On May 23, 2005, Prudential requested additional information needed
18  to clarify issues surrounding Petitioner's last day of work and notified her that it was suspending
19  its investigation pending receipt of previously-requested tax information.  (*Id.* at 25.)   On August
20  24, 2005, Prudential upheld its decision to deny long-term disability to Petitioner, concluding that
21  she did not meet the definition of "total disability."  (*Id.* at 27.)   Prudential also concluded that
22  because her last day of work was April 27, 2000, she ceased to be "actively at work" and a
23  "regular full time employee" as of April 28, 2000.  (*Id.*)  The claim examiner found that the
24  coverage under the policy ended as of April 28, 2000 and any medical condition that arose or
25  worsened as of July 2, 2000 was not covered under the Plan.  (*Id.*)

26  ***Standard of Review***

27  Parties are permitted to augment the administrative record in order to clarify and permit an
28  adequate de novo review.  In *Mongeluzo v. Baxter Long Term Disability Benefits Plan*, 46 F.3d

06cv1403 J (NLS)

938 (9th Cir. 1995), the court adopted "a scope of review that permits the district court in its

discretion to allow evidence that was not before the plan administrator." *Mongeluzo*, 46 F.3d at

943-44 (quoting *Quesinberry v. Life Insurance Company of North America*, 987 F.2d 1017, 1025

(4th Cir. 1993) (en banc)).  The court qualified this exception stating that "the district court

should exercise its discretion, however, only when circumstances clearly establish that additional

evidence is necessary to conduct an adequate de novo review of the benefit decision."  *Id.* at 944.

In her Report and Recommendation ("R&R"), Magistrate Judge Stormes found that there was an

agreement among the parties that this action was governed by a de novo review.  (R&R at 7.)

### Petitioner's Motion

Petitioner moves to augment the administrative record with a payroll stub demonstrating

the premium for the long-term disability benefits were paid by her employer through July 1,

2000.  (*See* Pet'r's Mot.)  In her R&R, Magistrate Judge Stormes concluded, "while Petitioner

argues that her payroll check was deducted for long-term disability premiums until July 1, 2000,

she offers no evidence of those payments, such as a pay stub or acknowledgment of payment.

Further, Petitioner offers no evidence of any other agreement between her and Defendants

regarding the extension of her long-term disability benefits."  (R&R at 10.)  Petitioner claims the

Court bases part of its recommendations on the lack of evidence showing the parties intended to

continue the long-term disability benefits and on the basis that there was no proof that any

premiums were paid by Petitioner's employer.  (Pet'r's. Mot. at 2.)  Petitioner asserts that the pay

stub demonstrates that the premium was paid and evidences Defendant Isis's intent to extend her

benefits.  (Petitioner's Objections to R&R. at 2-3.)  Further, Petitioner claims, "because the Court

has identified an ambiguity in the severance agreement . . . whether the agreement intended to

include the extension of long-term disability benefits, parol evidence should be admitted to

permit the Court to determine what the true intent of the parties was at the time they entered into

the severance agreement."  (*Id.* at 3.)

### Defendants' Objections

Defendants Prudential and Isis have filed a Response and Objection to Petitioner's

Motion, claiming the payroll statement is irrelevant and mischaracterizes the evidence.  (Def.'s

Objs. at 1.)  Defendants have three claims to support their argument:  (1) the pay stub does not evidence any actual payments made by the employer; (2) even if payments were made by the employer, Petitioner still does not meet the requirements of the Plan; and (3) the pay stub does not evidence any amendments or changes to the Plan.  (*Id.* at 1-2.)  Additionally, Defendants claim the unilateral filing of this motion does not comply with the requirements specifying the manner in which such motions were to be filed.  (*Id.* at 4.)

### *Discussion*

This Court **FINDS** Petitioner has not provided any further evidence that she was a member of the covered class when her employment ended on April 27, 2000.  Benefits for total disability are payable only if the period of disability began while the employee was a covered person.  (AR at 026.)  The Plan considers an employee a covered person if he or she was a regular full-time employee at the onset of disability. (D-SSUF at 5.)  Petitioner's employment ended on April 27, 2000.  (*Id.* at 11.)  Petitioner claims she was disabled on July 2, 2000.  (P-SSUF at 17.)  The addition of the payroll stub does not show any evidence that between April 27 and July 1, 2000, she was going to work as a regular full-time employee.  Additionally, the payroll stub does not show that Petitioner was eligible for any exception to the Plan's full-time employee requirement, nor does it provide evidence of a change in the long-term disability plan.  Because Petitioner's motion would not provide any further evidence to help the court determine whether she was

///
///
///
///
///
///
///
///
///
///

06cv1403 J (NLS)

1   eligible for long-term disability benefits under the Plan, this Court **DENIES** Petitioner's motion

2   to augment the record.

3   *Conclusion*

4     Because the addition of a payroll stub does not add any evidence to show that Petitioner

5   was a full-time employee and a member of the Plan's covered class at the time employment

6   ceased, Petitioner's motion to augment the record is **DENIED**.

7     **IT IS SO ORDERED.**

8

9     DATED: March 18, 2008

10                   _____

11                   HON. NAPOLEON A. JONES, JR.
                United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

06cv1403 J (NLS)